UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| THERESA RAMIREZ, | ) | No. CV 04-3315-RC |
| | ) | |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Theresa Ramirez filed a complaint on May 19, 2004, seeking review of the Commissioner's decision denying her application for disability benefits. On October 20, 2004, pursuant to the parties' stipulation, the Court remanded the matter to the Commissioner pursuant to sentence 6 of 42 U.S.C. § 405(g). On March 24, 2006, pursuant to the parties' stipulation, the Court reopened this action, and the Commissioner subsequently answered the complaint. On September 6, 2006, the parties filed a joint stipulation.

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue is substituted as the defendant in the action.

**BACKGROUND**

**I**

On January 15, 2002, plaintiff applied for disability benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 423, and the Supplemental Security Income program ("SSI") of Title XVI of the Act, 42 U.S.C. § 1382(a), claiming an inability to work since November 22, 1997, due to an abdominal rupture, gallstones, diabetes, hypertension, obesity, and degenerative arthritis. Certified Administrative Record ("A.R.") 4, 40-42. The plaintiff's applications were denied on April 24, 2002. A.R. 4, 33-37. The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Walter J. Fisher ("the ALJ") on January 21, 2003. A.R. 38-39, 303-21. On April 25, 2003, the ALJ issued a decision finding plaintiff is not disabled. A.R. 17-24. The plaintiff appealed the decision to the Appeals Council, which denied review of petitioner's Title II claim on March 3, 2004, A.R. 6-14, 297-302, but remanded the SSI claim to the ALJ. Jt. Stip. at 6:1-3. Plaintiff now seeks judicial review of the denial of her application for Title II disability benefits.

**II**

The plaintiff, who was born on December 22, 1954, is currently 52 years old. A.R. 40, 306. She has a high school education and has previously worked as an accounts receivable clerk. A.R. 52-59, 62, 67, 306-07.

Since September 7, 1998, plaintiff has received medical treatment at various health care facilities, including Los Angeles County-USC

Medical Center and the Edward R. Roybal Comprehensive Health Center, where she was diagnosed with, and treated for, various conditions, including obesity, osteoarthritis, an umbilical hernia, diabetes mellitus, bilateral knee degenerative joint disease, hypertension and depression. A.R. 103-63, 195-277, 287-96. On May 18, 2000, plaintiff was found not to be a surgical candidate for her degenerative knee joint disease, and conservative treatment was recommended. A.R. 147, 265. Rather, plaintiff received physical therapy on May 23, 2000, and was issued a cane. A.R. 224-25. Bilateral knee and hip x-rays taken on May 24, 2000, revealed bilateral narrowing of the medial compartment of both knees with bilateral bony osteophytes[2] on both lateral epicondyles, while plaintiff's hips were normal. A.R. 146, 270. Bilateral knee x-rays taken March 4, 2003, showed severe osteoarthritis bilaterally. A.R. 252.

On October 25, 1999, plaintiff's diabetes was poorly controlled. A.R. 132. On February 5, 2002, Dr. Soung noted plaintiff has had diabetes mellitus since November 1996, but there was no evidence of visual abnormalities or neuropathy due to the diabetes. A.R. 165. On September 29, 2003, plaintiff's diabetes was reported to be under improved control, while her hypertension was well-controlled. A.R. 293-94. On February 21, 2002, plaintiff was restricted from heavy lifting due to her umbilical hernia. A.R. 221. Finally, on December 29, 2003, it was noted that plaintiff had lost 30 pounds (down to 271 pounds) and she felt better, with less depression. A.R. 289.

---

[2] An osteophyte is "a bony excrescence or osseous outgrowth." Dorland's Illustrated Medical Dictionary at 1290.

On April 4, 2002, Rocely Ella-Tamayo, M.D., examined plaintiff and diagnosed her with obesity, diabetes mellitus, hypertension, multiple joint pain secondary to degenerative arthritis, and an umbilical hernia.  A.R. 168-72.  Left knee x-rays revealed hypertrophic degenerative changes with soft tissue swelling, narrowed joint space medially, and associated varus deformity.  A.R. 171, 174.  Dr. Ella Tamayo opined plaintiff can lift 20 pounds occasionally and 10 pounds frequently, stand and walk for about four hours in an 8-hour work day, she needs an assistive device for prolonged ambulation, and she cannot frequently kneel or squat because of her arthritis; however, plaintiff can sit for a long time and she has good fine fingering and gross manipulation bilaterally.  A.R. 171-72, 187.

On April 19, 2002, L. Chaing-Chien, M.D., a nonexamining physician opined plaintiff can occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to 10 pounds, stoop, kneel, crouch and crawl, climb and balance, and can stand and/or walk for up to four hours in an 8-hour day.  A.R. 179-86.

On August 29, 2002, plaintiff was examined, and commenced treatment, at the Los Angeles County Department of Mental Health,[3] where she was diagnosed with moderate, recurrent major depression and

---

[3]  These records were presented to the Appeals Council after the administrative hearing, and the Appeals Council made the records part of the administrative record, A.R. 10, 279-86, 322-35; therefore, they are properly before the Court.  See, e.g., Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir.) ("We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review."), cert. denied, 531 U.S. 1038 (2000).

4

her Global Assessment of Functioning ("GAF") was determined to be 60.[4] A.R. 279-86, 324-35.

## DISCUSSION

### III

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if his findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching his decision. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996). In this case, the parties agree that plaintiff's Title II insured status expired on December 31, 2001. A.R. 21.

---

[4] A GAF of 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

The Commissioner has promulgated regulations establishing a five-step sequential evaluation process for the ALJ to follow in a disability case.  20 C.F.R. § 404.1520.  In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting her from performing basic work activities.  20 C.F.R. § 404.1520(c).  If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  20 C.F.R. § 404.1520(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity during the period at issue.  (Step One).  The ALJ then found plaintiff has "obesity, hypertension, diabetes mellitus, multiple joint pain secondary to degenerative arthritis, and an umbilical hernia," which are severe impairments; however, she does not have a severe mental impairment.  (Step Two).  Additionally, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or

6

equals a Listing.  (Step Three).  Finally, the ALJ determined plaintiff can perform her past relevant work as an accounts receivable clerk; therefore, she is not disabled.  (Step Four).

**IV**

When a Title II claimant's period of eligibility for disability benefits expires on a specific date, it is the claimant's burden to prove she was either permanently disabled or subject to a condition that became so severe as to disable her **prior** to that date.  Greger v. Barnhart, 464 F.3d 968, 970 (9th Cir. 2006); Armstrong v. Comm'r of the Soc. Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998).  Any subsequent deterioration in the medical condition is immaterial.  Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995).

Here, both the ALJ and the Appeals Council, which received and considered plaintiff's supplemental mental health treatment records, inferentially found plaintiff does not have a severe mental impairment.  A.R. 7.  The plaintiff contends, however, that under Social Security Ruling ("SSR") 83-20,[5] the Appeals Council should have remanded her Title II claim to the ALJ to obtain a medical expert's testimony regarding the onset date of her mental impairment, and it erred in failing to do so.  The Court disagrees.

---

[5] Social Security Rulings constitute the Social Security Administration's interpretations of the statute it administers and of its own regulations.  Massachi v. Astrue, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007); Ukolov v. Barnhart, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005).  Although Social Security Rulings do not have the force of law, Chavez v. Dep't of Health & Human Servs., 103 F.3d 849, 851 (9th Cir. 1996), once published, they are binding upon ALJs and the Commissioner.  Holohan v. Massanari, 246 F.3d 1195, 1202-03 n.1 (9th Cir. 2001).

1  After a claimant is determined to be disabled, SSR 83-20 requires
2 a determination of the onset date of the claimant's disability.[6]  SSR
3 83-20, 1983 WL 31249 at *1; Morgan v. Sullivan, 945 F.2d 1079, 1081
4 (9th Cir. 1991) (per curiam).  However, when a claimant is found not
5 to be disabled, as here, it is axiomatic that there is no onset date
6 and the testimony of a medical expert is not required.  See, e.g.,
7 Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) ("Because the ALJ
8 found that [claimant] could have returned to his prior work and was
9 not disabled, the judge needed no medical expert to determine the
10 onset date of the alleged disability."); Scheck v. Barnhart, 357 F.3d
11 697, 701 (7th Cir. 2004) ("SSR 83-20 addresses the situation in which
12 an [ALJ] makes a finding that an individual is disabled as of an
13 application date and the question arises as to whether the disability
14 arose at an earlier time.  The ALJ did not find that [claimant] was
15 disabled, and therefore, there was no need to find an onset date.  In
16 short, SSR 83-20 does not apply."  (citations omitted)); Key v.
17 Callahan, 109 F.3d 270, 274 (6th Cir. 1997) ("Since there was no
18 finding that the claimant is disabled as a result of his mental
19 impairment or any other impairments or combination thereof, no inquiry
20 into onset date is required.").

22  Moreover, to the extent plaintiff argues the Commissioner's
23 decision is not supported by substantial evidence because the medical
24 evidence establishes she had a severe mental impairment before

---

[6] Establishing an onset date is critical for many claimants because "it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits."  SSR 83-20, 1983 WL 31249 at *1.

8

December 31, 2001, her date last insured, plaintiff's claim is without merit. Rather, the medical established merely that plaintiff was occasionally prescribed Paxil,[7] A.R. 114, 116-17, 119, 127, 129-30, 132-33; it did not show plaintiff had a mental impairment affecting her ability to perform basic work activities. Although the medical evidence presented to the Appeals Council established plaintiff was diagnosed with depression on August 29, 2002, A.R. 330-35, eight months after her date last insured, plaintiff has pointed to absolutely no evidence demonstrating her depression had any effect on her ability to perform basic work activities prior to her date last insured. Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); see also 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."). Therefore, plaintiff has not shown the Commissioner erred in Step Two. Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999).

V

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other

---

[7] "Paxil is prescribed for a serious, continuing depression that interferes with [the] ability to function. Symptoms of this type of depression often include changes in appetite and sleep patterns, a persistent low mood, loss of interest in people and activities, decreased sex drive, feelings of guilt or worthlessness, suicidal thoughts, difficulty concentrating, and slowed thinking." The PDR Family Guide to Prescription Drugs, 492 (8th ed. 2000).

1 limitations.  Mayes, 276 F.3d at 460.  Here, the ALJ found plaintiff
2 has the RFC to perform a limited range of light work,[8] as follows:

4   [plaintiff] is limited by her inability to lift and carry
5     more than twenty pounds on an occasional basis and ten
6     pounds on a frequent basis, by her inability to do prolonged
7     standing and walking, and by her inability to do repetitive
8     bending and stooping.

10 A.R. 23.  The plaintiff contends the ALJ's RFC finding is not
11 supported by substantial evidence because the ALJ failed to properly
12 consider her physical impairments.  However, here, the RFC finding is
13 based on the opinions of Drs. Ella-Tamayo and Chaing-Chien,[9] the only
14 physicians to consider plaintiff's RFC; thus, plaintiff's claim is
15 without merit.[10]  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149

---

[8] Under Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. § 404.1567(b). "[T]he full range of light work requires standing or walking for up to two-thirds of the workday."  Gallant v. Heckler, 753 F.2d 1450, 1454 n.1 (9th Cir. 1984); SSR 83-10, 1983 WL 31251, *6.

[9] Additionally, the emergency room physician's opinion that plaintiff should not do any heavy lifting due to her umbilical hernia inferentially supports the ALJ's finding that plaintiff can perform a limited range of light work.  A.R. 221.

[10] The plaintiff also contends the opinions of Drs. Ella-Tamayo and Chaing-Chien are flawed because they did not specifically address Dr. Ella-Tamayo's finding that plaintiff had

(9th Cir. 2001) (examining physician's medical report based on independent examination of claimant constitutes substantial evidence to support the ALJ's disability determination); Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) ("[T]he findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."), cert. denied, 519 U.S. 1113 (1997).

**VI**

The plaintiff testified at the administrative hearing that she has arthritis throughout her body, which causes neck, shoulder, back, arm and leg pain, her right elbow locks, her knees crackle and pop, her ankles give out, she has a "humongous" umbilical hernia, gallstones, and diabetes, she has problems with her ears in which she hears voices echoing, she has difficulty reading because of eye problems, she has anxiety attacks and depression, and she hyperventilates. A.R. 309-13, 315. The plaintiff stated she is sometimes unable to sit because of her hernia; generally, however, she can sit for approximately 10-30 minutes before she has to change positions. A.R. 310-12. The plaintiff also stated she can stand for approximately 15-20 minutes before having to sit down, she can walk

---

a reduced range of motion in her right shoulder. See A.R. 170 (right shoulder abduction limited to 100/180 degrees with pain, but all other upper extremity joints were normal with full range of motion without pain). However, since Dr. Ella-Tamayo specifically noted the limited right shoulder range of motion in the paragraph preceding her discussion of plaintiff's RFC, it is clear she considered it in making her RFC determination. See A.R. 171. Similarly, since Dr. Ella-Tamayo diagnosed plaintiff as obese, and this diagnosis also was considered by Dr. Ella-Tamayo when determining plaintiff's RFC.

1 maybe half a block with a cane, and if she goes to the market she can
2 barely walk and is "dying" by the time she gets in line.  A.R. 307,
3 311, 313-14.

5     Once a claimant has presented objective evidence she suffers from
6 an impairment that can cause pain or other nonexertional
7 limitations,[11] the ALJ may not discredit the claimant's testimony
8 "solely because the degree of pain alleged by the claimant is not
9 supported by objective medical evidence."  Bunnell v. Sullivan, 947
10 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d
11 882, 885 (9th Cir. 2004).  Rather, the ALJ "'must provide specific,
12 cogent reasons for the disbelief.'"  Greger, 464 F.3d at 972
13 (citations omitted); Moisa, 367 F.3d at 885.  Furthermore, if there is
14 medical evidence establishing an objective basis for some degree of
15 pain and related symptoms, and no evidence affirmatively suggesting
16 the claimant is malingering, the ALJ's reasons for rejecting the
17 claimant's testimony must be "clear and convincing."  Morgan v. Comm'r
18 of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Parra, 481
19 F.3d at 750 (9th Cir. 2007).

21    The ALJ provided several reasons for rejecting plaintiff's
22 testimony.  First, the ALJ found "there is no indication in the record
23 //
24 //

---

[11] "While most cases discuss excess pain testimony rather than excess symptom testimony, rules developed to assure proper consideration of excess pain apply equally to other medically related symptoms."  Swenson v. Sullivan, 876 F.2d 683, 687-88 (9th Cir. 1989).

that [plaintiff] could not perform a wide [range] of activities."[12] A.R. 22. Since no physician has opined plaintiff is disabled by any condition, see, e.g., A.R. 168-72, 179-86, 221, this is a proper basis for the ALJ's negative credibility determination. See, e.g., Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1995) (substantial evidence supported finding claimant could do narrow range of medium work where no examining physician opined claimant was totally disabled); Harper v. Sullivan, 887 F.2d 92, 96-97 (5th Cir. 1989) (substantial evidence supported ALJ's conclusion claimant's complaints were not credible when "[n]o physician stated that [the claimant] was physically disabled").

Additionally, the ALJ noted various gaps in plaintiff's medical treatment, including a gap of more than nine months between her alleged onset date of November 22, 1997, and medical treatment. A.R. 22. Since "[t]he ALJ is permitted to consider lack of treatment in his credibility determination[,]" Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005), this, too, is a proper factor showing plaintiff was not credible. See, e.g., Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004) (ALJ properly rejected claimant's testimony based, in part, on fact that claimant alleged injury in October 1996, but did not receive medical treatment until May 1997); Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted claimant's complaints of disabling pain when claimant

---

[12] The ALJ also noted plaintiff's treating physicians have "repeatedly urged her to control her diet and exercise more, not less, which strongly supports a conclusion that she can do more if motivated to do so." A.R. 22.

1  waited nine months after he was laid off to seek medical treatment and
2  failed to seek treatment).

4     Furthermore, the ALJ found "some of the claimant's symptoms may
5  be due to noncompliance with her medical regimen."  A.R. 22.  This
6  factor, too, is supported by the record, in that plaintiff's treating
7  physicians noted her noncompliance with her diabetic diet and various
8  medications.[13]  A.R. 109; see also Raney v. Barnhart, 396 F.3d 1007,
9  1011 (8th Cir. 2005) (ALJ's negative credibility determination based,
10 in part, on finding of "noncompliance with dietary regime and
11 medication" is proper).

13    For the foregoing reasons, the ALJ's negative credibility
14 assessment of plaintiff was "clear and convincing, sufficiently

---

[13]  The ALJ also rejected plaintiff's excess pain testimony because she was not taking narcotic pain medication.  A.R. 22. This reason is without basis since plaintiff has been prescribed and/or treated with various narcotic and anti-inflammatory medications including:  Demerol, which is "a narcotic analgesic, . . . prescribed for the relief of moderate to severe pain[,]" The PDR Family Guide to Prescription Drugs, 191 (8th ed. 2000); prescription-strength Motrin, which "is a nonsteroidal anti-inflammatory drug available in both prescription and nonprescription forms . . . for . . . relief of mild to moderate pain." id. at 428; Naprosyn, which is "a nonsteroidal anti-inflammatory drug . . . used to relieve the inflammation, swelling, stiffness, and joint pain associated with rheumatoid arthritis, osteoarthritis . . . and other types of mild to moderate pain." id. at 435, 437; Neurontin, which is used to treat neurological pain, Physicians' Desk Reference, 2589 (59th ed. 2005); and Vicodin, which contains a narcotic analgesic, and is used "for the relief of moderate to moderately severe pain."  The PDR Family Guide to Prescription Drugs at 723).  See, e.g., A.R. 258, 261, 273, 275, 277.  Therefore, this is not a clear and convincing reason for rejecting plaintiff's excess pain testimony.

specific, and supported by substantial evidence." <u>Celaya v. Halter</u>, 332 F.3d 1177, 1181 (9th Cir. 2003); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002).

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied; and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE: September 10, 2007          /s/ Rosalyn M. Chapman
                                   ROSALYN M. CHAPMAN
                                   UNITED STATES MAGISTRATE JUDGE

R&R\04-3315.MDO
9/10/07